UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Martin James Sharpe, #200480, *a/k/a James Martin Sharpe, a/k/a James Sharpe,*<br>        Plaintiff,<br>vs.<br>South Carolina Department of Corrections, SCDC; Dr. William Akerman, SCDC Dental Director; Dwight D. McMillian, Broad River CI; Dr. Joseph Ubah, Dentist Lee CI; McClary, Dental Assistant, Lee CI; Gregg, Dental Assistant, Broad River CI,<br>        Defendants. | C/A No. 4:13-1538-DCN-TER<br><br>Report and Recommendation |

## I. PROCEDURAL BACKGROUND

The Plaintiff, Martin James Sharpe, proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1] on June 7, 2013. Plaintiff filed a second amended complaint on October 16, 2013. Plaintiff is a prisoner in the custody of the South Carolina Department of Corrections. Plaintiff is currently housed at the Lee Correctional Institution "LCI" and was formerly housed at Broad River Correctional Institution "BRCI".

Defendants SCDC, Dr. Willam Y. Ackerman Jr., Dr. Joseph C. Ubah, Deborah L. McClary, and Kim M. Greggs (hereinafter "Defendants") filed a motion for summary judgment on November 11, 2013. (Doc.#70). Because Plaintiff is proceeding *pro se*, he was advised on or about November 12, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

to the Defendants' motion for summary judgment could result in dismissal of his complaint. The Plaintiff filed a response in opposition on January 15, 2014. (Doc. #97). Plaintiff filed a supplemental response to Defendants' motion for summary judgment on June 19, 2014. (Doc. #143).

Defendant Dwight D. McMillan (Defendant McMillan) filed a motion for summary judgment on January 10, 2014. (Doc. #92). Because Plaintiff is proceeding *pro se*, he was advised on or about January 14, 2014, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendant's motion for summary judgment could result in dismissal of his complaint. On May 9, 2014, the Plaintiff filed a response in opposition to Defendant McMillan's motion for summary judgment. (Doc. # 119)

## II. DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court  assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to

judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local

Rules 7.04, 7.05, D.S.C.

## B.  ARGUMENT OF PARTIES/ANALYSIS

In his second amended complaint, Plaintiff alleges as follows, quoted verbatim, in part:

> I am being denied dental treatment. January 5, 2012, I went to dental at Broad River Correctional Institute and complained of severe pain due to tooth 16. At that time Defendant Dwight D. McMillan filled tooth 16 with my consent. I again signed up for dental. February 28, 2012, I again went to dental and informed Defendants McMillan and Kim Gregg (Dental assistant) that the filling had done no good, that tooth 16 was still causing me extreme pain. After numbing tooth 16 an x-ray was taken and Dr. McMillan informed me that the root curved into the cheekbone and required an oral surgeon to remove it. At this dental appointment Defendants McMillan and Gregg filled tooth number 12. However, both defendants knew that the cavity in tooth 12 was superficial while the cavity was more severely decayed in tooth 13 and in need of more immediate care. It was determined 5 months later that tooth number 13 could not be saved and would need to be extracted. It was Defendants McMillan and Gregg failure to address tooth 13 which will result in the permanent loss of that tooth and the pain and suffering I have felt since Defendants' failure to act upon the knowledge they possessed. Furthermore Defendant Dr. McMillan informed me that he would make sure that I was referred to the oral surgeon.
>
> I have signed up for numerous sick calls with medical and complained of severe facial pain. (Dates see: 8/20/12; 10/29/12; 11/28/12; 2/08/13; 4/04/13). I complained at every sick call but was told to sign up for medical. When seen at the 11/28/12 sick call I complained of pain in tooth numbers 5, 7, and 16. At that time it was noted that the filing in tooth 7 had fallen out. I was seen in dental 11/29/12 and again complained of extreme pain in tooth numbers 5, 7, and 16. A temporary filling was placed in tooth 7. I again signed up for medical (seen 12/11/12) and complained of severe facial pain due to tooth numbers 5 and 16. I was seen by Defendant Dr. Joseph Ubah (Lee C.I. Dentist) March 14, 2013. I complained of tooth numbers 5 and 16 causing me severe pain but that tooth 16 hurt the worst. Another x-ray of tooth 16 was taken and tooth 16 was severely infected. I was given antibiotics but no dental help was provided for tooth #5. I have been in constant severe pain since 2011. Finally

4

> April 16, 2013 I was taken to the oral surgeon and tooth 16 was extracted. It has been hard for me to eat sleep or concentrate for over 16 months due to defendants failure to provide adequate pain due to tooth 5 mainly because of Defendant's policy of addressing only one tooth at a time. Finally Dr. William Akerman refused to provide approval for me to be seen by the oral surgeon despite my numerous complaints of pain. My dental records showing need for same, consultation with the BRCI dentist Dr. McMillan, and my grievances.

(Doc. # 59, second amended complaint).

Plaintiff seeks nominal, punitive, and actual money damages.

## Defendants' motion for summary judgment

Defendants SCDC, Dr. William Y. Ackerman Jr., Dr. Joseph C. Ubah, Deborah L. McClary, and Kim Greggs (Defendants) argue that they are entitled to summary judgment based on qualified immunity, Eleventh Amendment immunity, no Eighth Amendment violation, and Plaintiff has not submitted expert testimony.

Defendants submitted the affidavit of Dr. Akerman who attests that he is the Director of Dental Services for the SCDC. (Ackerman affidavit). At the time of the allegations, Plaintiff was an inmate in the SCDC housed at BRCI and Lee Correctional Institution ("LCI"). (Id.). Defendants Dr. Joseph Ubah, Deborah L. McClary, Kim M. Greggs, and Dr. Ackerman were employed by and acting within the scope of their official duties for the SCDC. (Id.). Each time Plaintiff presented to dental with a problem, he was evaluated and treated by a dentist. (Id.). There is no SCDC policy about "addressing only one tooth at a time."(Id.). Based on Plaintiff's dental records, he never complained to any dentist that he was having difficulty eating, sleeping, or concentrating because of dental pain, and his medical records do not support such allegation. Based on Plaintiff's dental records from February 28, 2012, to July 11, 2013, Defendant McMillan filled Tooth #16 on January

5

5, 2012, and noted that it may need a "possible extraction". (Id.). On February 28, 2012, Defendant McMillan performed a planned filling for Tooth #12. (Id.). He also informed Plaintiff of a need of an oral surgeon referral for removal of Tooth #16. (Id.). Defendant McMillan noted that Plaintiff did not complain about Tooth #13 or about Tooth #16 during his visit so no treatment was performed on these teeth. (Id.). Plaintiff returned to the dental office on August 9, 2012, and complained that tooth #13 was sensitive to cold. (Id.). Defendant Ubah noted that Tooth #13 had a cavity involving the pulp with irreversible pulpitis. (Id.). Plaintiff did not want Tooth #13 extracted and signed a refusal form .(Id.). The need to extract Tooth #13 and any pain and suffering Plaintiff experienced for this tooth was not caused by Defendant McMillan and Defendant Greggs allegedly failing to treat the tooth earlier. (Id.). Plaintiff was in lockup so he was unable to appear for his dental visits on October 4, 2012, and on November 15, 2012, due to security. (Id.). On November 29, 2012, Plaintiff returned to the dental office with a complaint that Tooth #7 was bothering him. (Id.). Defendant Ubah examined Plaintiff and noted that the filling in Tooth #7 was loose and that it had a secondary cavity. (Id.). He put a temporary filling in the tooth, but could not restore it with composite at the time, because of excessive bleeding. (Id.). Defendant Ubah noted that Tooth #7 would be restored with composite at a later appointment. (Id.). Based on Dr. Ubah's note, Plaintiff did not complain about Tooth #5 or Tooth #16 during this visit so no treatment was performed on these teeth. (Id.). Plaintiff's appointment on February 21, 2013, was rescheduled due to a roll call count, and his appointment on March 7, 2013, was rescheduled due to security. (Id.). On March 14, 2013, Plaintiff complained that Tooth #16 was throbbing. (Id.). Defendant Ubah examined Plaintiff and noted that Tooth #16 was positive to percussion, and the x-ray showed a periapical radiolucency and severe root curvature. (Id.). Plaintiff did not complain about Tooth #5 during this visit, so no treatment was

performed on this tooth. Because of the root curvature, Defendant Ubah told Plaintiff he would be sent to an oral surgeon for extraction of Tooth #16. (Id.). Defendant Ubah completed the Physician's transfer note or consultation form on March 15, 2013, and Ackerman approved Plaintiff's referral to the oral surgeon. (Id.). The oral surgeon extracted Tooth #16 on April 16, 2013. (Id., doc. #70-3). On April 17, 2013, Defendant McClary noted that Plaintiff had returned from the oral surgeon after extraction of Tooth #16 and that Defendant Ubah had ordered antibiotics and Ibuprofen, which were administered by a nurse. (Id.). Due to security lockup, Plaintiff's dental appointment on June 6, 2013, was rescheduled. (Id.). Defendant Ubah saw Plaintiff on July 11, 2013, for a scheduled restoration of Tooth #7. (Id.). Defendant Ubah's notes do not indicate that Plaintiff complained about Tooth #5 during this visit so no treatment was performed on this tooth. (Id.).

Based on Plaintiff's SCDC medical records, encounter #312 on November 28, 2012, reflects that the nurse noted that Plaintiff "had chipped tooth repair in dental not long ago" and "appears the repair has broken loose on top row of teeth". (Id.). The nurse reported that Plaintiff was scheduled on the dental list on November 29, 2012. (Id.). On November 29, 2012, Plaintiff complained to Defendant Ubah only about Tooth #7. (Id.). The note from the November 28, 2012, medical visit (encounter #312) does not mention Plaintiff complaining about pain in Tooth #5, Tooth #7 and Tooth #16, and does not mention that the filing in Tooth #7 had fallen out. (Id.). Based on the medical records, encounter #333 on April 4, 2013, Plaintiff told a nurse he had been having bad facial pain for approximately a year. He had seen dental, but the dentist did not do anything other than start him on some antibiotics. (Id.). Plaintiff said nothing was being done about his tooth pain or his facial swelling. (Id.). The nurse examined Plaintiff and did not find any facial edema. (Id.). The nurse noted that a tooth in the upper back left side was dark with no edema to the gum or left

side of the face. (Id.). Plaintiff was waiting for approval for surgery. (Id.). The nurse informed Plaintiff he had a pending dental appointment. (Id.). On April 8, 2013, Defendant McClary noted that Plaintiff had an appointment the following week with the oral surgeon and that when Plaintiff was in the dental clinic the last time, he did not want any pain medication. (Id.). She reported that Defendant Ubah said Plaintiff could have Tylenol, if he wanted some until his appointment with the oral surgeon.

Other than Plaintiff's complaint of facial pain on April 4, 2013, which was not supported by the findings of the physical exam, there is no evidence in any medical record or dental record that Plaintiff had complained about facial pain at any time within the past year. (Id.). Plaintiff did not complain about Tooth #16 again for 14 months until March 14, 2013, when Defendant Ubah referred Plaintiff to the oral surgeon, who extracted Tooth #16 on April 16, 2013. (Id.).

Defendants assert that McClary and Greggs are dental assistants and not qualified to make decisions regarding dental care for the Plaintiff and they did not make any decisions regarding his dental care which is performed by a dentist. (Id.). Defendants assert that based on the dental records, each time Plaintiff complained about a specific tooth, he received treatment for that tooth. Defendants assert that Dr. Akerman never denied a request for Plaintiff to be seen by an oral surgeon. (Id.). Defendants argue that Plaintiff received and continues to receive dental care and treatment and has not experienced any serious or life threatening dental problems, and has not had any emergent or urgent dental problems that required immediate or emergency care. (Id.).

Further, Defendants assert that Plaintiff fails to provide any competent medical/dental evidence regarding the sufficiency of the Defendants' treatment of Plaintiff's dental problems. Specifically, Defendants assert that Plaintiff has not offered any competent medical/dental evidence

to refute Defendant Ackerman's sworn affidavit testimony that all of Plaintiff's dental problems have been properly and timely evaluated and treated and that Plaintiff did not experience any serious or life threatening dental problems that required emergent or urgent care.

In his response in opposition, Plaintiff asserts that Dr. McMillan ordered that he be referred to an oral surgeon for tooth #16 but Defendant Ackerman refused to approve a visit to the oral surgeon and it took over a year to see the oral surgeon to have tooth #16 extracted when he knew the pain Plaintiff was experiencing. (Doc. #97). Plaintiff contends that Defendants knew since 2006 that he was in constant pain due to multiple cavities. Plaintiff asserts also that Defendants have known since 2009 that tooth #16 required attention and that tooth #5 has been causing pain since March 31, 2010. Plaintiff admits that Dr. McMillan filled tooth #16 on January 5, 2012, but noted that it may need to be extracted.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir.2008) (internal quotation marks omitted).

To show a defendant's deliberate indifference to a serious medical need, a prisoner must allege the defendant knew of and disregarded "the risk posed by" that need. Id. "[A]n inadvertent failure to provide adequate medical care" does not satisfy the standard, and thus mere negligence in diagnosis or treatment is insufficient to state a constitutional claim. Estelle, 429 U.S. at 105–06, 97 S.Ct. 285. Such indifference can be displayed, however, through the response of prison doctors

9

and other institutional personnel to an inmate's medical needs, including ignoring an inmate's serious condition or delaying medically necessary treatment. Id.

"A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir.2010) (vacating and remanding summary dismissal of complaint alleging three-month delay in dental treatment); see Smith v. Smith, 589 F.3d 736, 738–39 (4th Cir.2009) (finding claim of delay in administering prescribed medical treatment stated an Eighth Amendment claim).

Upon review of the record, including Plaintiff's dental records, the court does not find that Plaintiff has presented evidence sufficient to create a genuine issue of material fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Even if Plaintiff's allegations are true, he has shown nothing more than a disagreement with the dental treatment provided, not that he was completely denied dental treatment by these Defendants. He was seen and treated by Dr. Ubah. On August 9, 2012, Plaintiff complained that tooth #13 was sensitive to cold and, after examination, Dr. Ubah diagnosed him with a cavity involving the pulp with irreversible pulpitis. However, Plaintiff refused Dr. Ubah's recommendation to extract tooth #13 and signed a refusal of medical advise form. (Doc. #70-3). On March 14, 2013, Plaintiff complained of pain in tooth #16 and an x-ray was taken revealing an infection. Plaintiff was started on antibiotics and Dr. Ubah recommended that he be seen by the oral surgeon for extraction of tooth #16. Dr. Ackerman approved Plaintiff's referral to the oral surgeon and the oral surgeon extracted tooth #16 on April 16, 2013. It is clear from the records that Plaintiff was seen and treated for dental care. Plaintiff's allegations that the dentists should have filled a different tooth first is not a claim of deliberate indifference to dental care but merely a disagreement with treatment. Plaintiff's dispute addresses

the choice of one routine medical procedure versus another which is not enough to state an Eighth Amendment claim. There is no suggestion or evidence that Defendants maliciously intended to cause Plaintiff pain. Plaintiff complained of tooth #16 and the tooth was filled in January 2012. Plaintiff complained again of tooth #16 and x-rays were taken, antibiotics were prescribed, and he was referred to an oral surgeon. There is no evidence that a request for referral to an oral surgeon was submitted to Dr. Ackerman prior to March 2013. There was no delay in treatment, just not the treatment that Plaintiff was seeking at the time Plaintiff wanted the treatment.

Plaintiff has not shown that any conduct by the Defendant "shocks the conscious" as required by <u>Miltier v. Beorn</u>, 896 F.2d 848, 851–52 (4th Cir.1990) (citation omitted), overruled in part on other grounds by <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" <u>Jackson v. Fair</u>, 846 F.2d 811, 817 (1st Cir. 1988). Any disagreement between an inmate and medical personnel generally fails to state a claim.

Furthermore, if Plaintiff is attempting to file a dental/medical malpractice claim, it fails. Plaintiff has not complied with the requirements of S.C. Code Ann. 15-79-110 and 15-36-100 for filing medical malpractice claims. Plaintiff did not file a notice of intent to file suit and did not file an affidavit of an expert witness prior to filing suit.

### C.  ELEVENTH AMENDMENT IMMUNITY

The Defendants contend that the Plaintiff's §1983 claims against them for money damages in their official capacity are barred pursuant to Eleventh Amendment Immunity. Defendants also argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as an employee of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that

12

a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendants were/are employees of the SCDC at the time of the allegations in the complaint. Thus, they are entitled to Eleventh Amendment immunity from monetary damages in their official capacity.

## D. QUALIFIED IMMUNITY

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does
>  not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

13

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, Defendants are entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be granted as to these Defendants.

### E.  PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory as to Defendants , the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367©.

### Dwight McMillan's motion for summary judgment

As previously stated, Dr. McMillan (Defendant) filed a motion for summary judgment on January 10, 2014. (Doc. #92). In the memorandum in support of the motion for summary judgment[2], Dr. McMillan asserts that he is a licensed general dentist in good standing in South Carolina where he has a private practice and is also a locum tenens dentist with Mid America Health, Inc., a medical staffing group that contracts with the SCDC to provide dentists at some correctional facilities. Dr. McMillan provided dental services at BRCI during the time period alleged in the Plaintiff's complaint. Dr. McMillan saw Plaintiff in the dental clinic at BRCI on three occasions during Plaintiff's incarceration at BRCI before being transferred in May 2012. Based on dental records, McMillan asserts he filled tooth #7 on May 26, 2011, filled tooth #16 on January 5, 2012, and filled tooth #12 on February 28, 2012. McMillan states that there is no record of an x-ray being taken on any of these visits and no request for an oral surgeon referral was made by him. Plaintiff did not return to the dental clinic before his transfer to LCI but was seen by sick call or mental health ten times after the last February 28, 2012, dental clinic visit. (Doc. #92-1).

In response in opposition, Plaintiff argues that Defendant McMillan can be found to be deliberately indifferent simply because "there is ample evidence that Plaintiff has several painful cavities of which Defendant McMillan was aware." (Doc. #119). Plaintiff asserts that "defendant McMillan saw Plaintiff on several different occasions. Defendant McMillan repaired exactly one tooth at each of these appointments despite the knowledge that A) Plaintiff had numerous cavities; B) Plaintiff was in pain due to said cavities; C) Failure to repair the teeth would lead to severe difficulty in chewing; and D) failure to repair the teeth would result in further deterioration of the

---

[2] Dr. McMillan did not submit an affidavit along with the memorandum. He submitted medical/dental records and a copy of his responses to discovery.

teeth." (Id.). Plaintiff argues that Defendant McMillan could have repaired tooth #5 and Tooth #7 at one appointment and tooth #12 and tooth #13 at another appointment which would have led to "quicker repair of tooth #31 and tooth #19". Plaintiff contends that tooth #13 could have been repaired approximately nine months prior to the determination that said tooth could not be saved. (Id.). Additionally, Plaintiff asserts that Defendant McMillan diagnosed that tooth 16 must be extracted to stop Plaintiff's severe pain and told Plaintiff that he would make sure to refer him to the oral surgeon. (Id.).

As previously discussed, "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment. Estelle v. Gamble, 429 U.S. at 104. A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d at 241. (internal quotation marks omitted).

Based on Plaintiff's SCDC dental records, Dr. McMillan filled tooth #7 on May 26, 2011, tooth #16 on January 5, 2012, and tooth #12 on February 28, 2012. Thus, Plaintiff was seen and treated by Dr. McMillan on three occasions while he was incarcerated at BRCI. In the dental records, Dr. McMillan noted on January 5, 2012, that he filled the tooth and noted "#16 (possible extraction)". (Doc. #70-3, p. 2). In the dental records dated February 28, 2012, Dr. McMillan noted that "I/M Informed of Need of O.S. referral for removal #16." In the memorandum in support of the motion for summary judgment, Dr. McMillan asserts that there is no record of any request for a referral to an oral surgeon being made by him and that his note does not state that he will refer or did refer Plaintiff to an oral surgeon. Dr. McMillan asserts that he explained in his discovery

response to Plaintiff that this note indicated he would *consider* referral to an oral surgeon for removal of tooth 16 but at no time in his dental clinic notes or in the dental record does Dr. McMillan state tooth 16 required extraction at that time relying on the note in January that said "possible extraction." (Doc. #92-1, p. 6)(emphasis added). Dr. McMillan attached a copy of his responses to Plaintiff's interrogatories in which he responded to interrogatory #8 that he "did not refer plaintiff to Dr. Akerman for oral surgery on February 28, 2012. Defendant would refer to the entry on February 28, 2012, dental clinic notes indicating 'inmate informed of need of oral surgery referral for removal no. 16.'" Id. In Defendant McMillan's response to Plaintiff's additional interrogatories, McMillan responded to interrogatory 1 that his clinic notes indicated that "inmate informed of need of oral surgery referral for removal no. 16." but that based on his usual practices, this entry "indicates Defendant informed Plaintiff that if tooth 16 ultimately required extraction a referral to an oral surgeon might be needed." (Doc. #92-5). In response to interrogatory 3 as to why he did not refer Plaintiff for oral surgeon approval after noting that he would require an oral surgeon referral, Dr. McMillan respond that "[u]pon information and belief, Defendant informed plaintiff on February 28, 2012, that if tooth 16 required extraction it would require a referral to an oral surgeon. Plaintiff did not return to the dental clinic or request dental treatment in subsequent sick call visits before his transfer to Lee Correctional Institution." (Doc. #92-5, p. 2).

Plaintiff alleges that Dr. McMillan stated he needed to be referred to an oral surgeon for extraction of tooth 16. The record supports Plaintiff's allegation based on the dental record notes of February 28, 2012. Additionally, based on Defendant McMillan's responses to discovery, he states that he did not refer Plaintiff to Dr. Ackerman for oral surgery on February 28, 2012. McMillan further responded that his note meant that if tooth 16 required extraction it would require a referral

17

to an oral surgeon not that he needed to be referred at that time. However, this is not what the dental note states. Therefore, in the light most favorable to the Plaintiff, there is a genuine issue of fact as to whether or not Dr. McMillan failed to refer Plaintiff to an oral surgeon or for approval of a referral to an oral surgeon for extraction of tooth 16 in February 2012. Therefore, there is an issue of material fact as to whether Dr. McMillan was indifferent to Plaintiff's serious medical need. Accordingly, it is recommended that Defendant McMillan's motion for summary judgment (doc. #92) be denied.

### III.  CONCLUS ION

Based on the above reasoning, it is recommended that the motion for summary judgment by Defendants SCDC, Akerman, Ubah, McClary, and Greggs "Defendants" (doc. #70) be GRANTED and Plaintiff's motion for sanctions (Doc. #144) against these Defendants be deemed moot.

It is further recommended that the motion for summary judgment by Defendant McMillan (doc. #92) be DENIED.

        Respectfully submitted,

        s/Thomas E. Rogers, III
        Thomas E. Rogers, III
        United States Magistrate Judge

July 30, 2014
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**